All righty, our next case is Rover Pipeline versus Rover Tract number, it goes on and on, but number 19-1613. Good morning. Good morning. You may proceed. Thank you. Tom Zabel on behalf of Rover Pipeline, may I reserve four minutes for rebuttal? That would be granted. Thank you. So I'm going to move straight on to the question that the court identified as the one to address in the oral argument, which is the highest and best use. So basically a condemnation case where... Pre-taking, of course. Pardon? Pre-taking, of course. Pre-taking. Yes, yes, yes, your honor. So pre-taking, the Rover indicated and testified through its expert that the highest and best use was rural residential, which is what it was zoned for. And there's two rural residentials. There's a RP and an R1, and it's just a difference whether you can build houses on two acres or one acre. The Buchanan Farms had a highest and best use for 157 lot high density subdivision. And all the evidence that they presented was for 157 lot subdivision. They didn't present other evidence. The commission landed somewhere in between, right? What they did is they picked the lower end of the highest and best use for the 157 lot development that Mr. Barna testified to on behalf of Buchanan Farms. That's the number. But they didn't use the adjusted number. They used a $6,400 number. And the lowest comp that Mr. Barna had was actually, if you adjusted it, was $5,000 an acre. So they actually valued it more than the lowest high density comp that Mr. Barna used. Was there evidence on the record to support that number? No. So the problem with what the commission and the court did is they basically said there was no evidence to support this 157 acre high density subdivision. But then they did what seemed right, which they said, well, it's rural residential highest and best use. But then they added on, but it includes multifamily, which threw us all to a big surprise when they said that because nobody contended that it was multifamily through the whole hearing. And that's even higher density than 157 lot subdivision. Is the sole problem here that the commission had the phrase multifamily? If they had admitted multifamily residential here, would that valuation have been clearly erroneous? Well, we believe it would have been. What they did is clearly erroneous, but had they done that, I mean, they couldn't prove, they didn't prove that the highest and best use was for 157 lot residential subdivision. Multifamily is a higher density typically than a residential subdivision because you have multifamilies within the same amount of space. So they actually, they reject this 157 lot development, but then they do a higher density, highest and best use with no evidence from any party as to the value of that or the fact that you could even get it zoned. I think that Judge Bezos is asking something a little different. Okay, sorry. The use of the terminology, it was used, unless I got it wrong. Is it just the terminology? I have a hard time saying it's just the terminology because we were surprised when we got the commission report and they talked about multifamily when it had never been mentioned in the entire hearing and it clearly wasn't what it was zoned for. Then the district court adopted that and we did object and point out that it's not allowed by the zoning ordinance. So we don't think it was a mistake of the district court to embrace that. What value evidence was in the record? You mentioned RP, the two acre lot for one house, R1, the one acre lot. What was the evidence in the record about how much per acre it would have gone for if it was either of those? Right. There were eight comparable sales by Mr. Erbig who was the rover expert. That basically ranged from about $2,000 to $4,500 where he averaged out for $3,400 for the 73 acre track and $3,600 for the 49 acre track. Interestingly, Mr. Barna, all of his comparables for before the take, there were four. They all had high density, like one had 269 lots, one had 187, one had 58 for a 32 acre track. So all those were very high density. But when he did his after take comps, he actually shared one of our after take comps, Mr. Erbig's. His comp number eight was actually one of Mr. Erbig's comps and that adjusted with $5,000. I'm sorry, strike that. So he used one of Mr. Erbig's comps. Let's just focus on pre-taking comps to keep it simple. You're saying your expert's numbers, 2,000 to 4,500, they averaged out around 3,500, 34 for one, 36 for the other. That's correct. The Barna comps were higher, but all the Barna comps were high density. I'm going to ask your friend on the other side whether he agrees that that's the state of the record. Fair warning to you. So you're saying there are no RP or R1 comps in the record that come close to the $6,400 an acre figure. That's absolutely correct. And I would refer to Appendix 00161, which is Mr. Barna's grid on his comps pre-take. And they identify the number of lots on each of his comps, which I had mentioned earlier, all high density. And even his lowest pre-take comp for a high density subdivision was number four. And it had a sales price of 6,305, $6,305. But he adjusted it 20% and took it down to $5,000. And so when the commission came in and tried to do what they said, blending between two different highs and best uses, none of which was for multifamily. But doesn't this happen all the time? Don't judges and juries sometimes get confronted with two extremes, pick something in the middle? It happens a lot in many contexts, but the problem in this context that separates it from that is the fact that you had two completely different highs and best uses. And they rejected the 157 lot highest and best use. There's no evidence to blend from. And then you can't use that to value a multifamily highest and best use. So what do you have us do? Send this back? Yes, so the Fifth Circuit, we cited it in our brief. I understand the Fifth Circuit. I'm in the Third Circuit. I'm not in the Fifth Circuit. But it is persuasive. And it's the only case I could find. All the condemnation cases across the country, you think you would find a situation where someone had addressed something like this. In that case, the landowner contended the highest and best use was for a pipeline easement. And the government contended the highest and best use was for industrial. The commission and the court decided that it was for a pipeline right-of-way. And on appeal to the Fifth Circuit, they concluded there was no evidence to support that. So they remanded it with instructions to value the highest and best use based on industrial and the government's comparables. And what we would ask the court to do would be to do the same thing, to remand this case with instructions to use the highest and best use of rural residential, which is what both the district court and the commission concluded without the multifamily element attached to it, and look at the eight comparable sales that Mr. Erbig had. And also, they could also look at the four post-take. Hold on. Let me ask you a question. Let's look at this in a slightly different way. Your friend across the aisle cited our Miller v. U.S. case that says, it is well settled that when a verdict is within the range of testimony as to the value of property, it will not be disturbed on appeal. You concede that this hit at least the low end of your friend's expert. How do we deal with Miller, the scope of evidence rule? Sure. So Miller is different in the sense that in this case, they can't pick, but there was no evidence suggested for a multifamily use. So you can't pick from evidence. Okay. So there's no evidence multifamily use. That doesn't get you there. But your own chart at 161, one of the comparables, sale number four, granted, it's Allegheny County, closer to Pittsburgh, but 135 acres, density loss per acre, 0.69. So that satisfies R1, and it's selling for 6,300 an acre. I mean, there's an adjustment that's made in here. But that's in the range of what is given. So would it be under Smith, would it be within the discretion of the district court and commission to say, okay, we think this is like comparable number four, granted, Allegheny County, but maybe Washington County is turning into the Allegheny County. Why isn't that permissible? So I think I'll go back, and I know I've said it a couple of times. I'm not trying to be argumentative. But the fact of the matter is they're giving that value to a highest and best use for multifamily, and there was no evidence presented that. And there's no correlation to say that a rural residential subdivision correlates to a low-density multifamily use. That's my problem. I mean, I think if we had both testified and they hadn't excluded their 157-lot deal and they said that's R1, we're at R1 or RP, they could have picked in between. They could have blended it. I think you have two bookends. And that happens a lot in the law. I'm not saying it doesn't. This is a very unique case where the commission and the court completely rejected all their value testimony for pre-take, so there's nothing left to blend on that side. And you can't compare or take prices for a high-density residential and blend that or somehow figure out how that values into a low-density multifamily structure residence. I see I still have a minute left. So we would say there's some question as to whether or not the highest and best use is a mixed question of fact and law. But I'm not going to argue about whether it's de novo or whether it's clearly erroneous because we believe the evidence shows it's clearly erroneous on multiple grounds. We don't think that you can blend two completely different highest and best uses, especially a highest and best use for which nobody advocated at the hearing and nobody presented any evidence on what the value would be of a multifamily structure or zoning. And so that is the problem that we have with what has been done. So we would ask that you remand it in accordance with what the Fifth Circuit did in U.S. versus 8.41 acres, which is an older decision back in 1982. Thank you, counsel. Thank you. We'll hear in rebuttal. Thank you. May it please the Court. Harry Kunselman for Buchanan Farm No. 4, Your Honors. I'd like to begin with the standard of review. It's very important, Your Honors, that you focus on that in this appeal. Rover cites one case, a single case, for the proposition that the standard of review is de novo. It's a Sixth Circuit case, and in that particular case, that court was addressing a legal question. The questions before Your Honors are factual findings that were made by the District Court and the commissioners, and based on the VICI Racing and Anderson versus City of Bessemer cases that we've cited in our briefs, we believe that the standard of review here is under a clearly erroneous standard. I would furthermore point out that even under one of the cases that Rover cites, which is the U.S. versus 275.71 acres case, highest and best use is a factual threshold question. So even that question of what is highest and best use is a factual determination subject to a clearly erroneous standard. So is there any evidence on the record you can reference us that supports the commission and the District Court's conclusion? Yes, Your Honor. I'd like to start with the valuation evidence. And I would point out that there are a number of credibility determinations that are being made in that process. The first one I want to point out is that Rover began this case by alleging that just compensation was $7,901.25. By the end of the case, when they went back to the District Court, they asked for relief in the form of an award of $5,921.25. They actually reduced what they claimed was just compensation, but that claim was based upon a mere mathematical calculation of taking the number of acres occupied by the easement and applying the after take valuation per acre valuation of their expert. They completely ignored the residual effect of the take on the property. Could we get to the core legal issue here, which I take to be The syllogism on the other side is the decision below used the technical phrase multifamily residential, which you try to dismiss as a misnomer or a typo, which I'm skeptical of. If it bears its technical meaning, it's not allowed under the zoning code. We need to find a reasonable likelihood that the commission would have granted a variant, that the zoning board would have granted a variance from RP or R1 in order to get to a multifamily. And I'm not aware of any evidence in the record that says it would have gotten that. So this looks like a raw split the baby rather than something that under the governing law would have been permissible. Yes. And Your Honor, I can understand sort of why at very first glance that may seem to be the case. But I offer the following. First of all, the use of the word multi was a is a technical or an inartful expression. I will grant that. OK, but when you look at the evidence with the with both the commission and the district court, we're interested in was the zoning ordinance, which specifically provided a lot of the testimony in this case had to do with what you could do under an R1 designation and what you could do under an RP designation. Density in that context was not referring to the type of dwelling on the structure. It was referring to the number of lots that could be placed on this parcel. And when you look at the evidence from that standpoint, the commission, both the commission and the district court, we're looking at what could be done from from the zoning ordinance perspective with this property. So the use of the term multifamily, you obviously you can have multifamilies when you have single family dwellings on each lot. There are many families living in an environment like problems here. First of all, when when you use a term of art, we normally presume it means what it says. Your argument seems to be, well, then we should be sending it back to see if they really meant that. Second, even if the the comps here, the rates on most of the comps don't get you to where the valuation is unless it's actual multifamily. The single family evidence cited by your friend on the other side has substantially lower per acre valuations. Any at least anything that fits within our one or RP one acre lots above most of the comps he's pointing to that are being used. That get you close to the sixty four hundred acre involve less than one acre lot. So how does that fit within the zone? Now, here's why I disagree with your honor on that point, is that Mr. Barna performed a comparable sales analysis of this of this property. It's very important to keep this in mind when when Rover wants you to focus on this specific hundred and fifty four lot subdivision. That is not what he ultimately relied upon for his opinion. He testifies to this effect. And he says that he conducted a sale, a sales comparison approach to value in which he looked at four comparables. The ones that are appendix one sixty one. Yes. I was talking. Yes. Three of the four are lot sizes that are not permissible under RP or R1. Correct. Which is why the which is why I believe the commission chose not to credit that testimony in terms of the value that Mr. Barna placed on on the on the property. But what the commission did have in front of it was a comparable where the the lot price was sixty three hundred and five dollars, as your honor pointed out. And when you couple that with all the other evidence, the mountain of evidence that the Buchanan's testified to that Mr. Barna testified to where the commissioners actually went out and viewed the property. They drove around. They saw all of the development that was occurring there. The employers that were moving into the area, the recreational and entertainment amenities that have come to the area. All of those things are additional facts and evidence that the truck that the commissioners and the district court looked at. And they were free to come up with the value that they ultimately did come up with in the pre taking. Tell me if I'm wrong. I'm not from western Pennsylvania, but isn't don't prices go up as you get closer to Pittsburgh? Because this comp is an Allegheny County cop. Well, I think what your honor is getting to is a weight of the evidence. OK. Which is why the clearly erroneous standard is very important to keep in mind. You're not disputing that as a rule of thumb, prices are higher, closer to. Well, I can't I can't personally say that because there are certainly going to be areas in Allegheny County where the price would be low. What in the record establishes that this area is at least as hot? The growth here is such that, yes, we can apply Allegheny County prices here. It was all of the evidence that were testified to by the Buchanan's. Mr. Buchanan testified to the all of the new highways, 15 minutes from the airport. The proximity to Weirton, West Virginia and Steubenville, all of the shopping in the area. I would direct your honor to Appendix 782 to 783. The Buchanan's purchased this property as an investment among five other farms that they own in the area. Those that testimony is that 644 to 647 in the record. In addition, they also added a parcel of property in 1999 to provide additional road access to the property. That's at 668 and 669 of the appendix. And in terms of the other things that were happening, I would direct your honor to 661 through 666 of the appendix, where there is a discussion about all the amenities, including Star Lake Amphitheater, Star Point Industrial Park, Hillman State Park, Pepsi Roadhouse, a hydro recovery plant, range resources, well pads. Then we talk about proximity to highways. This is it. Pages document 116 one page 95, where there's discussion about how this property is only one minute from the exit on Route 22 with access to the southern beltway. Mrs. Buchanan testified that the. All right. There's evidence that the court could have used to support a high single family valuation. You still got to get over the footnote that tries to tuck away. It's a misnomer. They didn't actually mean what they said. Do you have any authority or case law that has done that? Yes, your honor. I would first direct your honor to the citations in our brief. Twenty eight U.S.C. Section 2111, which provides it on appeal. The court must examine the record without regard to errors or defects which do not affect the substantial rights of the parties. Same thing in federal rule of civil procedure. In the General Motors case of this court, where the court stated that non-constitutional legal errors will be deemed harmless if it is highly probable that the error did not affect the judgment. Now, in preparation for argument, I did try to comb through and find some case in the condemnation context where a similar type of error or glitch occurred. At the trial court level that the appellate court overlooked in the in the case that I was able to find is called Felix versus Baldwin Whitehall School District 289 A. Second 788. In that case, the jury came back with a verdict and used the phrase they were awarding a sum of money for a fair and just settlement instead of using the phrase fair market value, which was part of the jury instructions. The court in that case held that that phrase was mere surplusage and it was not something that affected the result below. I would urge the same thing in this case. If you look at the evidence in this case, all of the testimony by the Buchanan's, by Mr. Barna, and by Mr. Irving all focused on this distinction between the zoning, R1 versus RP. If you go to the zoning ordinance, which is at. Pardon me. Pages three thirty nine to three forty. It all starts there with the zoning ordinance and what size of lot is permitted already permitted without any further municipal approval. The zoning ordinance gave the property owner the right to subdivide into lots. At the time of the taking, it was two acre lots. But as we put evidence in that when the Buchanan's bought the property, it was zoned R1. Without their knowledge, it was converted to RP. They went back, even though this happened shortly after the taking, they went back to the municipality and sought an R1 designation, which was very quickly and unanimously granted. So the district court and the commission had abundant evidence that this property was suitable for residential development. It wasn't critical to the outcome of this case, whether the development was one hundred and fifty four lots or some lower number. The point was that the zoning ordinance allowed residential development. There's another problem just in terms of the usage. Well, no, no. The other thing I wanted to point out, Your Honor, and this goes to, I think, what Judge Restrepo asked early on, which is, isn't this just a case where the fact finder settled on a number or found a number of value that was somewhere in between? What one side had put forth or one expert had put forth and what the other side had put forth. And I would urge the court to look at, go back to the Miller case, which says it is well settled that when a verdict is within the range of the testimony as to the value of property, it will not be disturbed on appeal. Also, the three hundred fifty four point two eight acres of land case, because the verdict was within the range of the expert testimony as to fair market value, the verdict cannot be said to be against the weight of the evidence simply because it ranges closer to the landowner's appraisal than to the government's appraisal. I have other citations. We didn't want to string cite that proposition, but I did want to direct your honors to that case law. There's one other thing I wanted to take issue with. You're out of time. Oh, I'm sorry. But I'll give you, if you want to say it in a sentence, that's fine. Rover cites cases for the proposition that there's somehow a presumption that the use at the time of taking is presumed and that that presumption is rebuttable. I have gone through the cases and I cannot find any cases that support that proposition, either under Pennsylvania law or under the law of the circuit. I mean, the only case that they where that language appears is a northern district of Alabama district court case, which is, of course, is not binding on this court. All right. Thank you, counsel. We'll hear rebuttal. I didn't hear any counsel cite any evidence that supported anything other than one hundred fifty seven acre high density subdivision. There's clearly nothing in the record that supports multifamily use or the value of a multifamily use. And Mr. Barnett and Buchanan Farms put all their eggs in one basket. That is one hundred fifty seven lot high density subdivision. They didn't waffle and say there may be other uses. That's what they valued. That's all the evidence that they presented. And there was a question asked about can you get an exemption? Exhibit 30, which is at Appendix 00332, has the RP and the R1 and none of those allow for multifamily. They have a called use by special exception and none of those include multifamily. In fact, you'd have to flip further back in the zoning ordinance to get to something called Neighborhood Service District, which is a complete different zoning classification before you can get to multifamily. So therein lies the problem. Obviously, there was no testimony that there would be some reasonable probability in the foreseeable future that you would have the ability to get this property rezoned for multifamily under this neighborhood service district zoning classification that would allow them to utilize it. So, again, it's not a simple blending of the evidence. I understand in many condemnation cases, I do this for a living and I get it. I mean, there's always a lot of courts say there's a bookend. And if you go somewhere in between the two bookends, you're okay. But it's not okay when you reject the entire damage model of the plaintiff. I'm sorry, of the landowner in this case, it would be Cannon Farms, who has the burden of proof. They have no other evidence in the record to support any other value of any highest and best use. And then for the commission and the court to pick a completely separate highest and best use that was never testified to, never addressed. That's all I have. Unless you have any questions, I'll concede the rest of my time back to the court. Thank you. Thank you, counsel. Thank you. We thank counsel for excellent briefing and oral argument in this interesting case. We'll take the case under advisement. We'd like to greet counsel at sidebar and I'll ask the clerk if we go off the record.